**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LARRY HUTCHERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 06-657-WS-C** |
| | ) | |
| **BOB RILEY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This capital case comes before the Court on plaintiff Larry Hutcherson's Complaint for Declaratory and Preliminary and Permanent Injunctive Relief (doc. 1). Given the time-sensitive nature of this action, defendants Bob Riley and Troy King have responded in expedited fashion, filing a Motion to Dismiss (doc. 3), a supporting memorandum (doc. 4), and a brief in opposition to plaintiff's request for preliminary injunctive relief (doc. 6). Plaintiff has filed a Response to Motion to Dismiss (doc. 7).[1]

**I.      Procedural Background.**

On December 4, 1996, pursuant to a plea of guilty, plaintiff Larry Hutcherson was convicted of intentional murder during a robbery, in violation of Ala. Code § 13A-5-40(a)(4). *See Hutcherson v. State*, 727 So.2d 846, 850-51 (Ala.Crim.App. 1997); *Ex parte Hutcherson*, 727 So.2d 861, 861-62 (Ala. 1998). The conviction relates to the murder of 89-year-old Irma Thelma Gray on June 26, 1992, inside her home on Moffett Road in Mobile, Alabama, during the course of a robbery in which Hutcherson demanded her money and jewelry, slit her throat when she tried to escape, and then proceeded to steal her microwave, air conditioner and other items. *See Hutcherson v. State*, 677 So.2d 1174, 1178-80 (Ala.Crim.App. 1994). The jury recommended a death sentence by a vote of 11-1. On January 13, 1997, Mobile County Circuit

---

[1]      In addition to the aforementioned filings, defendants Lucy Baxley, Lieutenant Governor of Alabama, and Seth Hammett, Speaker of the House of Representatives for Alabama, have filed a Motion to Dismiss (doc. 5) plaintiff's claims against them on grounds of absolute legislative immunity. The Court need not reach this Motion.

Judge Braxton L. Kittrell sentenced Hutcherson to death.

Hutcherson exhausted his direct appeals in June 1999, after the Supreme Court of Alabama affirmed his conviction and the United States Supreme Court denied his petition for writ of certiorari. *See Hutcherson v. Alabama*, 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999) (denying certiorari). On May 4, 2001, Hutcherson filed a Rule 32 petition in the Alabama courts, arguing that he had involuntarily pleaded guilty to capital murder, that his trial and appellate attorneys had rendered ineffective assistance of counsel, and that the jury had been improperly instructed. The Rule 32 petition was denied as untimely, and that adjudication was affirmed by both levels of Alabama appellate courts, after which the Alabama Court of Criminal Appeals entered a certificate of judgment on February 16, 2004. *See Ex parte Hutcherson*, 887 So.2d 212 (Ala. 2004). On November 17, 2004, Hutcherson filed a successive Rule 32 petition, arguing that the Alabama Death Penalty System is infirm because there is no provision for automatic appointment of counsel after direct appeals are exhausted, and because there is no provision for formal training of counsel in the intricacies of collateral proceedings in the state and federal systems. This second Rule 32 petition was dismissed as time-barred and otherwise lacking in merit on February 3, 2005. Hutcherson, who was represented by counsel in each of these Rule 32 proceedings, did not appeal.

In addition to his state post-conviction filings, Hutcherson, by and through counsel, filed a petition for writ of habeas corpus in this District Court on August 9, 2004, pursuant to 28 U.S.C. § 2254. The action was styled *Larry Eugene Hutcherson v. Grant Culliver*, Civil Action No. 04-514-CG-C. Hutcherson's stated grounds for federal habeas relief were largely coextensive with those set forth in his second Rule 32 petition. In particular, he maintained that the Alabama Death Penalty Statute was unconstitutional because it did not provide for appointment of counsel for Rule 32 proceedings, did not train counsel in matters of federal collateral relief, and did not make sufficient funds available for retention of forensic, psychiatric and mitigation experts in post-conviction proceedings. On December 8, 2005, Chief Judge Granade entered an order dismissing Hutcherson's § 2254 petition as untimely because the petition had not been filed within the one-year window provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), as codified at 28 U.S.C. § 2244(d)(1), and Hutcherson had failed to make any showing that might warrant equitable tolling. On appeal from denial of

his § 2254 petition, the Eleventh Circuit denied Hutcherson's request for a Certificate of Appealability on March 16, 2006.  Hutcherson sought no further appellate review of his § 2254 petition.

On June 27, 2006, defendant Troy King, Attorney General of Alabama, filed a Motion to Set an Execution Date in the Supreme Court of Alabama, recounting this procedural history. Notice of this Motion was served both on Hutcherson directly and on his present counsel of record, who represented Hutcherson in his second Rule 32 proceedings and his § 2254 proceedings, as well as in the current action.  Despite actual notice that the State was moving forward to impose his death sentence, Hutcherson apparently failed to initiate any legal action or otherwise to respond to that Motion.  On September 20, 2006, King renewed his request for the setting of an execution date, as the court had taken no action in response to the predecessor request.  On September 25, 2006, the Alabama Supreme Court obliged, fixing October 26, 2006 as the date for Hutcherson's execution.

Three and a half months after learning that the State was attempting to fix a date for his execution, 17 days after his execution date was set by the Alabama Supreme Court, and just 14 days before that execution date, Hutcherson filed the instant Complaint against a host of Alabama public officials.[2]  This action, which on its face is filed pursuant to 42 U.S.C. § 1983, raises no new grounds for relief, but largely reiterates Hutcherson's arguments from his failed, untimely § 2254 petition and his successive Rule 32 petition.  In particular, Hutcherson asserts that the Alabama Death Penalty Statute is constitutionally deficient in the following respects: (a) "it fails to assure that properly trained counsel will be provided to indigent defendants" at trial, appellate, and post-conviction stages; (b) it failed to provide Hutcherson with representation as a matter of right in his Rule 32 actions; (c) compensation for Hutcherson's Rule 32 counsel was capped at $1,000 and there was no provision for hiring experts or investigators; (d) certain "esoteric peculiarities" in the Alabama post-conviction system create traps for unwary, untrained

---

[2]     Named defendants include Bob Riley, Governor of Alabama; King; Chief Justice Drayton Nabors of the Alabama Supreme Court; Seth Hammett, Speaker of the Alabama House of Representatives; Lucy Baxley, Lieutenant Governor of Alabama; and unnamed government officials "responsible for Administration and funding of judicial system of Alabama." (Complaint, at 1.)

counsel; (e) after a death sentence is affirmed on direct appeal, "it provides no meaningful mechanism for seeking ... a stay of the judgment pending a filing with the United States Supreme Court"; (f) it does not toll the time for filing a Rule 32 petition during the time in which a petition for writ of certiorari could have been filed with the United States Supreme Court, leading to "confusion" in the filing of a Rule 32 petition;[3] and (g) it does not meet the minimum standards articulated in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).[4]  Based on these allegations, Hutcherson requests that this Court find that his constitutional rights have been violated, strike down the Alabama Death Penalty Statute as unconstitutional, enjoin his execution setting of October 26, 2006, and enjoin Alabama from proceeding against Hutcherson pending appointment of *Wiggins*-compliant counsel.

---

[3]        This contention has direct application to Hutcherson's circumstances.  Indeed, the U.S. Supreme Court denied his petition for writ of certiorari on direct appeal on June 21, 1999, and his first Rule 32 petition followed on May 4, 2001.  At that time, Rule 32.2(c), Ala.Crim.P., specified a two-year limitations period for filing state collateral actions.  It appears that counsel misunderstood the rule by computing the two-year period from the U.S. Supreme Court's denial of certiorari on June 21, 1999, rather than from the Alabama Court of Criminal Appeals' issuance of a certificate of judgment on January 5, 1999.  In fact, as the rule itself stated at that time, it was the January 1999 date that triggered the two-year period, rendering Hutcherson's May 2001 Rule 32 petition four months late.  *See Ex parte Hutcherson*, 847 So.2d 386, 387-89 (Ala. 2002).

[4]        Hutcherson leans heavily on the *Wiggins* Court's mention of "the standards for capital defense work articulated by the American Bar Association (ABA) - standards to which we have long referred as guides for determining what is reasonable."  539 U.S. at 524 (citation omitted).  Those ABA Standards address not only the performance of counsel, but also the states' training obligations.  Hutcherson characterizes this action as being designed to litigate "the failure of the judicial system to provide [him] with the fundamental rights guaranteed ... [by] *Wiggins*" and to protect "his rights as guaranteed under the Constitution of the United States by the application of the ABA Standards as envisioned in *Wiggins*."  (Doc. 7, at 11- 12.)  Thus, Hutcherson would have this Court frame the ABA Standards as a constitutional floor beneath which Alabama's criminal justice system cannot sink in capital cases.  As defendants properly point out, however, the *Wiggins* Court merely referred to those ABA Standards as "guides for determining what is reasonable," which is a far cry from pronouncing them a minimum constitutional threshold for Alabama and other states.  Thus, the constitutional moorings of Hutcherson's argument are questionable; however, that issue need not and will not be resolved in ruling on the pending Motion to Dismiss.

II.     **Analysis.**

Defendants Riley and King assert that the Complaint is due to be dismissed for want of subject matter jurisdiction and for failure to state claim on which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P.  Moreover, defendants maintain that, even if these defects are disregarded, Hutcherson's request for injunctive relief must fail, in any event.  The Court agrees on both fronts.

A.     *Availability of Section 1983 Theory of Liability.*

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under ... 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004).  The Supreme Court has had ample occasion in recent years to clarify the boundaries between these two kinds of actions and the circumstances under which each may be proper.  In light of those authorities, it is now well-established that "a prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. ... He must seek federal habeas corpus relief (or appropriate state relief) instead."  *Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005).  The Supreme Court has consistently "focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement ... through a judicial determination that necessarily implies the unlawfulness of the State's custody."  *Wilkinson*, 544 U.S. at 81.  As Justice Breyer, writing for the *Wilkinson* majority, explained, "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."  544 U.S. at 81-82.[5]  By contrast, a state prisoner can properly bring a § 1983 action asserting

---

[5]     In this regard, *Wilkinson* is simply one decision in an unbroken chain of Supreme Court precedent holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *see also Nelson v. Campbell*, 541 U.S. 637, 643, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004) (Section 1983 "must yield to the more specific federal habeas statute, with its attendant procedural and

"requests for relief turning on circumstances of confinement."  *Muhammad*, 540 U.S. at 750; *see also Nelson v. Campbell*, 541 U.S. 637, 643, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004) ("constitutional claims that merely challenge the conditions of a prisoner's confinement ... fall outside of that core [of habeas corpus] and may be brought pursuant to § 1983").

These principles were recently applied and amplified in *Hill v. McDonough*, --- U.S. ----, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006), wherein the petitioner filed a § 1983 action challenging the constitutionality of the particular three-drug cocktail that the State of Florida intended to use to execute him by lethal injection.  The unanimous Supreme Court found that Hill's challenge was properly styled as a § 1983 action challenging the conditions of confinement because "Hill's action if successful would not necessarily prevent the State from executing him by lethal injection," but would instead simply enjoin the respondents from executing Hill in a particular manner.  *Id.* at 2102.  "Under these circumstances a grant of injunctive relief could not be seen as barring the execution of Hill's sentence."  *Id.*

By contrast, Hutcherson's § 1983 action does not challenge a specific method of execution, nor does he pose claims that could reasonably be characterized as an attack on the conditions of his confinement.  Instead, Hutcherson's Complaint takes the form of a broad-based attack on the structure and safeguards of the Alabama Death Penalty System, including the qualifications and training of capital defense counsel; the funding of counsel, experts and investigators; the computation of time for filing state post-conviction petitions, and the like.  Such arguments, if successful, would tend to undermine the validity of Hutcherson's conviction and sentence, rather than the conditions of confinement or the specific manner of his execution.  As such, under the *Wilkerson* / *Muhammad* / *Nelson* / *Hill* line of precedent, Hutcherson's Complaint falls squarely within the core of habeas corpus, and is not cognizable under Section 1983, as a matter of law.

Nor can the Complaint be rejuvenated by being construed, recharacterized and decided

---

exhaustion requirements, ***where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence***" because such claims fall within the "core" of habeas corpus and are thus not cognizable under § 1983) (emphasis added); *Muhammad*, 540 U.S. at 750 ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus").

as a habeas petition under 28 U.S.C. § 2254.  Were the Court to do so, this filing would

constitute an impermissible second or successive petition which the Eleventh Circuit has not

authorized Hutcherson to file.  *See, e.g., Hill v. Crosby*, 437 F.3d 1084, 1085 (11th Cir. 2006) ("It

is clear to us that the district court lacked jurisdiction to consider appellant's claim because it is

the functional equivalent of a successive habeas petition and he failed to obtain leave of this

court to file it."); *Fugate v. Department of Corrections*, 301 F.3d 1287, 1288 (11th Cir. 2002)

(where § 1983 plaintiff filed functional equivalent of second habeas petition without permission

from appeals court, district court lacked jurisdiction to consider same); *Gilreath v. State Bd. of*

*Pardons and Paroles*, 273 F.3d 932, 933 (11th Cir. 2001) (district court lacked jurisdiction to

consider state prisoner's second habeas corpus petition, where he had not secured permission

from Eleventh Circuit to file same); 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive

application permitted by this section is filed in the district court, the applicant shall move in the

appropriate court of appeals for an order authorizing the district court to consider the

application.").[6]  It seems virtually certain that Hutcherson's knowledge of the constraint on

second or successive habeas petitions was the moving force behind his decision to characterize

this action as one pursuant to § 1983.  Rather than reframe the Complaint, then, the Court simply

observes that a construction of the Complaint as a § 2254 petition rather than a § 1983 action

could not save plaintiff's claims or render them properly cognizable at this time.

### B.     Equities of Staying Execution Date.

Even if Hutcherson's Complaint were properly filed under § 1983 or as a successive §

2254 petition for which the requisite permission had been granted by the appellate gatekeeper,

his request for an injunction or stay of his October 26 execution date is due to be denied for

another reason.  The Supreme Court has made clear that such a stay is an equitable remedy,

---

[6]     Even if plaintiff had properly received permission from the court of appeals to file a second or successive § 2254 petition, the Complaint would still fail as a matter of law.  After all, the claims presented in this latest action are virtually identical to those in Hutcherson's previous § 2254 petition.  If this action were construed as a § 2254 proceeding, those claims would have to be dismissed because they were presented in earlier federal habeas proceedings. *See In re Conklin*, 416 F.3d 1281, 1282 (11th Cir. 2005) ("We are constrained by 28 U.S.C. § 2244 to dismiss claims in a second or successive petition for habeas corpus if the claims have been presented in a previous application.").

which a district court should not grant without first considering such factors as the likelihood of success on the merits, the relative harms to the parties, and "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 649-650. For the reasons described *supra*, among others identified in defendants' opposition brief (doc. 6), there is no meaningful likelihood that Hutcherson can succeed on the merits here. Moreover, the *Nelson* Court recognized a "strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* at 650. The Supreme Court reiterated that view four months ago in *Hill*, reaffirming *Nelson*'s pronouncements on these points and stating that "[t]he federal courts can and should protect States from dilatory or speculative suits." *Hill*, 126 S.Ct. at 2104. In that regard, "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.*

Binding appellate authorities have taken this Supreme Court guidance to heart in two quite recent cases. Earlier this month, the Eleventh Circuit concluded that a § 1983 action filed on the eve of execution challenging Florida's three-drug lethal injection protocol was properly dismissed because the inmate "deliberately waited until the last few days before his execution to file what he could have filed many months, if not years, earlier. He could have brought the claim in plenty of time to permit full consideration of it without any need to stay the execution order that was finally entered in the case." *Rutherford v. McDonough*, --- F.3d ----, 2006 WL 2830968, *2-3 (11th Cir. Oct. 5, 2006). Similarly, on remand from the Supreme Court in *Hill*, the Eleventh Circuit found that the petitioner had been dilatory in filing a § 1983 complaint just four days before his scheduled execution date, even though he was aware of his claims much earlier, and that he had demonstrated an intent to delay proceedings in order to necessitate a stay. *Hill v. McDonough*, --- F.3d ----, 2006 WL 2641659, *2-3 (11th Cir. Sept. 15, 2006). Characterizing Hill as "the architect of the very trap from which he now seeks relief," the *Hill* panel expressly declined "to allow further litigation of a § 1983 case filed essentially on the eve of execution" by a dilatory plaintiff. *Id.* at *3.

Hutcherson is in much the same position as the petitioners in *Rutherford* and *Hall*. The arguments he raises against the Alabama Death Penalty System, including the lack of training of defense counsel in post-conviction procedures, the lack of a right to appointed counsel in Rule

32 proceedings, and the funding limitations in post-conviction matters, are not new.  These same contentions were the moving force behind Hutcherson's second Rule 32 petition filed in November 2004, and his § 2254 petition filed in August 2004.  He was thus fully aware of the factual and legal bases for his claims in this action for more than two years before he filed suit. In addition to the obvious statute of limitations problems,[7] these facts show that Hutcherson has been dilatory in pursuing these claims.  Had he wanted to litigate this action, he could have filed his Complaint two years ago, which would have allowed for full and complete consideration of the merits without requiring entry of a stay.  He opted not to do so.  Hutcherson also could have brought these claims in June 2006, when he first became aware that the State was seeking an execution date.  Instead, he waited until October 12, 2006, a scant 14 days before his scheduled execution, to file suit.  These circumstances leave little doubt that the real purpose of the Complaint is to effect a postponement of his execution.  Based on the Supreme Court's emphatic pronouncements in *Hill* and *Nelson*, and the Eleventh Circuit's strict application of those principles in *Rutherford* and *Hill*, the Court finds that Hutcherson's dilatory § 1983 filing does not warrant entry of a preliminary injunction or other stay of his October 26 execution date.  This equitable ground forms a separate basis for denial of the injunctive relief sought in the Complaint.

---

[7]      The statute of limitations for § 1983 claims is determined by reference to the applicable state law period for personal injury torts, which in Alabama is two years.  *See City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 123 n.5, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005) (explaining general rule for computation of limitations period in § 1983 actions); *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) ("Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983.") (citation omitted); *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) ("the two-year limitations period of Ala. Code § 6-2-38(*l*) applies to section 1983 actions in Alabama"); *Smith v. Auburn University*, 201 F. Supp.2d 1216, 1227 n.6 (M.D. Ala. 2002) (applying Alabama's two-year limitations statute to § 1983 claims); *Shows v. Morgan*, 40 F. Supp.2d 1345, 1362 (M.D. Ala. 1999) (declaring that all § 1983 actions commenced in Alabama are governed by two-year limitations period of § 6-2-38); *Anderson-Free v. Steptoe*, 970 F. Supp. 945, 953 (M.D. Ala. 1997) ("Claims brought in Alabama and arising under 42 U.S.C. § 1983 are subject to a two-year personal injury statute of limitations."); *Gorman v. Wood*, 663 So.2d 921, 922 (Ala. 1995) ("the only statute of limitations applicable to § 1983 claims in Alabama is the two-year statute of limitations in Ala. Code 1975, § 6-2-38(*l*)").

**III.    Conclusion.**

Under the Prison Litigation Reform Act of 1995, this Court is obligated to dismiss "any action brought with respect to prison conditions under section 1983 ... if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted."  42 U.S.C. § 1997e(c)(1).  For the foregoing reasons, the Court readily concludes that Hutcherson has failed to state a claim upon which relief can be granted, and furthermore that his claims for injunctive relief are unsustainable, given the equities of the situation.  Accordingly, defendants' Motion to Dismiss is due to be, and the same hereby is, **granted**.[8]  The Complaint for Declaratory and Preliminary and Permanent Injunctive Relief (doc. 1) is **dismissed with prejudice**, and Hutcherson's request for an injunction barring the State of Alabama from proceeding with his execution on October 26, 2006 is **denied**.  A separate judgment will enter.

DONE and ORDERED this 18th day of October, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[8]    In reaching this conclusion, the undersigned notes Hutcherson's argument that the Motion to Dismiss is "premature" because "jurisdictional issues are intertwined with the merits." (Doc. 7, at 3.)  The Court finds no such intertwining in this case, and is aware of no reason why waiting to resolve these straightforward, purely legal questions at a later stage would promote the interests of justice or serve the interests of these parties or this Court in a timely, efficient, and accurate disposition of the issues joined herein.